CRAIG v. KELLEY.

1. COVENANTS—BUILDING RESTRICTIONS—COST—AREA OF SITE—GENERAL PLAN.

In subdivision largely restricted to use for residential purposes where minimum dwelling must cost $7,500, which also contained 20-foot business lots with restriction of $4,000 minimum as to buildings to be erected thereon, where general plan emphasizes minimum cost of the building to be erected rather than minimum area of its site, cost of buildings in business areas must be at least $4,000 but it could occupy one or more lots or parts of lots; since such construction does not detract from the value of other restrictions applicable solely to residential areas.

2. SAME—GENERAL PLAN OF SUBDIVISION—BUSINESS AREAS.

The general plan of a subdivision as to business areas should not be rigidly adhered to and will not be strictly enforced when it would be harmful only to the plattors and not be substantially beneficial to owners of improved residence lots.

3. SAME—BUILDING RESTRICTIONS—RESIDENCES IN BUSINESS AREAS.

Where minimum cost of residences in residential areas of subdivision is $7,500 and minimum cost of buildings on 20-foot business lots was $4,000, fact that building erected in business area might be used for business or combination business and residence purposes would not necessarily permit erection of residence costing only $4,000.

4. INJUNCTION—BUILDING RESTRICTIONS—ERECTIONS PENDENTE LITE.

Decree enjoining builders "from using for first floor exterior wall dwelling construction materials other than brick, stone, stucco, or a combination thereof" except one dwelling now utilizing wood· materials is modified to include any dwellings erected *pendente lite* where property affected was in a subdivision restricting use of wood for building construction.

5. SAME—VIOLATION OF BUILDING RESTRICTION.

Owners of improved residence lots in subdivision in which minimum cost of residences was limited to $7,500 were properly granted injunction restraining erection of houses that could

General plan, inferences from creation, see 5 Restatement, Property, § 527, comment b; purpose, see § 531, comment d; beneficiaries, see § 541, comment f; enforcement, see § 528, comment b.

not sell for more than $6,000, the largest amount for which a residence might sell that could be granted priorities for materials during war.

6. COVENANTS—MINIMUM BUILDING COST—FINANCING—SALES—PROFITS—ARCHITECT'S FEES.

Financing expense, sales cost, builder's profit and architect's fee were not proper items to add to cost of labor and materials of residences so as to bring cost of construction within minimum permitted by restrictions on subdivision, especially where properties had to be sold for less than such minimum in order to obtain priorities on building materials.

7. CONTEMPT—EVIDENCE—VIOLATION OF BUILDING RESTRICTION.

Evidence taken by circuit judge on reference from Supreme Court *held*, to justify finding that defendants were in contempt of court for having violated temporary restraining order relative to construction of subdivision's restrictions.

8. SAME—JURISDICTION—PETITION.

Verified petition of party plaintiff to have defendants and another held in contempt for violation of temporary restraining order conferred jurisdiction on court to hold parties who violate the order in contempt of court.

9. SAME—SUBTERFUGE.

Subterfuge is as much of contempt of court as though done by more direct action.

10. COURTS—STAY OF PROCEEDINGS.

Order of Supreme Court in chancery case which stayed proceedings in circuit court after claim of appeal from latter's decree had been filed and which continued in effect the temporary restraining order of the circuit judge except to allow defendants at their own risk to proceed with the completion of certain houses was in effect notwithstanding a subsequent order of Supreme Court continuing stay that did not expressly mention the temporary restraining order.

11. CONTEMPT—INJUNCTION—PARTIES.

Fact that one charged with contempt of court for violating an injunction was not a party to the main case does not preclude his being held in contempt (3 Comp. Laws 1929, § 13910, as amended by Act No. 29, Pub. Acts 1931).

12. SAME—STATUTES—COURTS.

Courts possess the power to hold persons in contempt of court for violation of their orders independent of statute (3 Comp. Laws 1929, § 13910, as amended by Act No. 29, Pub. Acts 1931).

13. SAME—TEMPORARY RESTRAINING ORDER—STAY OF PROCEEDINGS.

Defendants who erected residences costing less than $6,000 after issuance of temporary restraining order requiring that no residences be built costing less than $7,500, which order was continued in effect by stay of proceedings issued by Supreme Court, were in contempt of both the temporary restraining order and the order of the Supreme Court.

14. SAME—INJUNCTION—ENFORCEMENT.

Jurisdiction to enforce contempt of restraining order of circuit court as well as order of Supreme Court is conferred upon circuit court where injunction restraining violation of building restriction is made permanent (3 Comp. Laws 1929, § 13910, as amended by Act No. 29, Pub. Acts 1931).

15. COSTS—INJUNCTION—CONTEMPT—APPEAL.

Where plaintiffs secured an injunction as to violation of building restriction and defendants and another were found guilty of contempt for violating the injunction, plaintiffs are awarded costs of the lower court and of the contempt proceedings but where each party has prevailed only in part on appeal, no costs of the Supreme Court are awarded.

Appeal from Oakland; Hartrick (George B.), J. Submitted January 11, 1945. (Docket No. 31, Calendar No. 42,250.) · Decided April 9, 1945. Rehearing in contempt proceedings denied June 8, 1945.

Bill by Elmer S. Craig and others against Louise Lathrup Kelley and others to restrain a claimed violation of building restrictions. From decree entered, plaintiffs appeal and defendants Louise Lathrup Kelley and Lathrup Town Hall Corporation cross-appeal. Affirmed.

Contempt proceedings against cross-appellants and Charles D. Kelley. Defendants found guilty of contempt.

*Samuel B. Keene* and *Arthur Mitchell,* for plaintiffs.

*George A. Cram,* for defendants.

*Miller, Baldwin & Boos,* for defendant Charles D. Kelley in contempt proceedings.

BOYLES, J. In 1924 defendant Louise Lathrup Kelley as owner subdivided 1,000 acres of land in Southfield township, Oakland county, into a series of subdivisions containing 4,000 lots, known collectively as the Lathrup Townsite. Upwards of $150,000 was spent in advertising and promoting sales of the lots, and thousands of copies of a 144-page book, elaborately illustrated, were distributed promoting the development. Upwards of $2,000,000 worth of lots were sold and about 325 homes have been erected. The general plan under which Lathrup Townsite was subdivided, and particularly the land contracts and conveyances for lots involved in the instant case, contain certain building restrictions which later will be referred to more in detail.

About 1942 Louise Lathrup Kelley, owner of unsold lots in Lathrup Townsite, entered into a contract with defendant René De Seranno in which she agreed to try to obtain government priorities for building materials to build a number of houses in Lathrup Townsite, to convey to De Seranno three lots in the townsite on which to build a model for a typical home, and to convey 49 homesites to De Seranno, on which he was to construct 49 homes typical of the model home, and thereafter reconvey the same to Louise Lathrup Kelley. The cost of construction to be paid to De Seranno by Mrs. Kelley was not to exceed an average of $5,400 for each home, unless De Seranno should show that the actual cost of labor and material for each home exceeded $5,400 (without any profit) in which event Mrs. Kelley was to pay not to exceed $5,700 for each

home. Defendant Lathrup Town Hall Corporation, of which Louise Lathrup Kelley was the principal stockholder, obtained priorities for the erection of at least 50 homes in the Lathrup Townsite, each to sell for not more than $6,000, that being the maximum selling cost for which priority might be obtained. The Federal Housing Authority, as a condition to granting priorities for material, fixed the maximum price for which each house was to be sold at not to exceed $6,000.

Defendants Kelley and De Seranno started construction of one or more so-called model homes. Plaintiffs herein, owners of a number of homes in Lathrup Townsite, filed the instant bill of complaint claiming that said defendants were erecting homes of a less value than the minimum allowed by the general plan and the building restrictions governing Lathrup Townsite, under which they had erected their homes; also upon lot areas smaller than allowed thereby; and also contrary to the restrictions in other respects. Upon the filing of the bill of complaint a temporary restraining order was issued enjoining said defendants from taking or permitting any action to be taken toward erecting a residential dwelling costing less than $7,500, or upon any lot area less than 7,500 square feet. Issue was joined, proofs heard by the court, and a decree entered from which both parties appeal. Plaintiffs appeal from certain provisions of the decree relating to the erection of dwellings on business, or a combination of residence and business, lots, the use of wood siding, and denying costs to plaintiffs; and defendants Louise Lathrup Kelley and Lathrup Town Hall Corporation cross-appeal from certain other provisions relating to the cost of houses on lots set aside for residences only, and also relating to the method of determining minimum costs. A

large number of other individuals appear to have entered the case as "intervening defendants," whose interests, if any, are subordinate to the interests of the real parties in the case.

The restrictions involved are as follows:

"Bungalows and semi-bungalows: Excepting on lots hereinafter mentioned, nothing but one single bungalow dwelling house, or semi-bungalow dwelling house, for one family only, *costing not less than $7,500*, and the necessary outbuildings appurtenant thereto, shall be erected on any lot in said subdivision; * * *

"Exception: Lots numbered 1 to 191, inclusive, may be used for business purposes, or for a combination of residence and business purposes, but shall not be used for manufacturing purposes. Buildings on said last-mentioned lots shall cost at least $4,000 per lot. * * *

"Materials: All buildings erected on this subdivision, except appurtenant outbuildings, shall have for exterior construction either brick, stone, stucco, or combinations thereof; * * *

"Cost values in this contract shall be construed to be of the average for the year 1924."

Plaintiffs seek reversal of that part of the decree which would permit the erection of houses on lots set apart for business, or a combination of residence and business, purposes, without a definite limitation of minimum cost. Plaintiffs say:

"These houses, the court held, were free of any cost restriction when built on lots originally platted for *business or business and residence use.*"

The decree provides:

"Paragraph I

"(a) That there is no restriction on the lots described in subsection (c) of this paragraph I which

require that a single dwelling erected on any such lot, or parcel of land composed of more than one such lot, shall have a minimum cost value of $7,500 or more as of 1924 or any other time.

" (b) By practical and equitable application, subject only to zoning regulations, herein not concerned with, the site for any dwelling and its attached or outbuildings built upon such site may consist of a parcel of land composed of one such lot and any number of adjoining lots or one or more of such lots and a part or parts of adjoining lot or lots, reference being had to lots described in subsection (c) of paragraph I.

" (c) That the lots to which this paragraph is applicable are the following:"

Subsection (c) of paragraph I then enumerates the lots in each of the subdivisions to which the foregoing applies, apparently describing the lots set aside for business, or a combination of residence and business, purposes.

The general plan and building restriction referring to the cost of buildings on lots set aside for business, or a combination of residence and business, purposes, provides:

"Buildings on said last-mentioned lots shall cost at least $4,000 per lot."

Both parties agree that a subsequently-enacted Southfield township zoning ordinance is not here involved and has no bearing in the case. Plaintiffs contend that *$4,000 per lot* should be construed to mean *$8,000* for a building on a site covering *two* lots, and so on, ad infinitum. It is not denied that the subdividers had set aside too great a number of lots for business purposes, usually 20 feet in width. The only use thus far made of these sites has been for a town hall and a real-estate office. Plaintiffs contend that the minimum cost of a building in

these areas as of 1924 must be $4,000 *per lot,* meaning a single platted lot.

Plaintiffs rely on the general plan adopted by the subdividers, for both residence and business sites. The general plan emphasizes the minimum cost of each building rather than the minimum area of the site on which a building might be located. This is particularly made plain in the restrictions governing residences, which provide that more than one lot may be utilized as the site for a home. We feel that the restriction governing those parts of the townsite to be used for business, or a combination of residence and business purposes, should be similarly construed. The restrictions emphasize the cost of the buildings rather than the size of the site to be used. We conclude that in the business areas the cost of each building as of 1924 must be not less than $4,000, and the building may occupy one or more lots, or parts of lots. Such construction of the business lot restriction does not detract from the value of those other restrictions which apply solely to residential areas. Plainly some benefit will result to home owners, as well as the subdividers, if these business areas may be utilized, rather than continue to remain vacant property. The general plan as to the business lots should not be rigidly adhered to and will not be strictly enforced when it would be harmful only to the plattors and not shown to result in any substantial benefit to plaintiffs herein. The minimum cost value of $4,000 as of 1924 for any building erected for business, or a combination of residence and business, purposes, in the areas set aside for such purposes, must be $4,000, whether erected on a single lot or a greater area. This does not mean that a residence home may be erected at a minimum cost of $4,000 in these areas. Again we repeat that the zoning ordinance has not been con-

sidered in reaching our conclusions in the case before us. In so far as the decree permits a building to be erected in the area set aside for business, or a combination of residence and business, purposes, on one or more lots, it will be modified as above stated, with a minimum cost of $4,000 as of 1924.

Plaintiffs claim that the lower court should have enjoined the use of wood siding for exterior of first floor on houses built *pendente lite*. In their brief plaintiffs' counsel fail to point out any part of the record showing what structures, if any, violate this restriction. The decree enjoins all defendants "from using for first floor exterior wall dwelling construction materials other than brick, stone, stucco, or a combination thereof. This injunction shall not apply to one dwelling now utilizing wood materials." That part of the decree will be changed to include any dwellings erected *pendente lite*.

Defendants Louise Lathrup Kelley and Lathrup Town Hall Corporation have cross-appealed from that part of the decree enjoining them from erecting any residential dwelling the cost of which shall be less than $7,500 as of 1924 on any lot in the Lathrup Townsite except those certain enumerated lots which were restricted to use for business, or a combination of residence and business, purposes. Most of the testimony adduced by defendants was for the purpose of showing that the cost of the houses they proposed to erect in 1942 at a contractor-builder's cost of $5,400, or $5,700, for material, labor and profits, would be approximately the same as a cost of $7,500 "as of 1924." We are not impressed with defendants' painstaking efforts to build up a contract price of $5,700 into a cost value of $7,500 by the addition of such indefinite additions as financing expense (25 per cent.), sales cost (5 per cent.), builder's profit (15 per cent.),

architect's fee (5 per cent.). The record.before us justifies the conclusion of the circuit judge that average building costs in 1942 were substantially the same as in 1924. It is quite apparent from the record that defendants Louise Lathrup Kelley, Rene De Seranno and Lathrup Town Hall Corporation in 1942 were seeking to build these dwellings at a cost not to exceed $6,000 for the reason that they could not obtain government priorities for material except on the condition that the selling price of each house and lot to purchasers would not exceed $6,000. The government's requirement was not $6,000 as the cost of material and labor—it was the maximum price to be charged a buyer for the completed dwelling and the lot. Said defendants could not build the houses without priorities for material, which limited the maximum cost of the house and lot to the purchaser at $6,000. On the other hand, the cost restrictions which Louise Lathrup Kelley herself had imposed on purchasers of residence lots in her subdivisions prevented the erection of a home which cost less than $7,500 as of 1924. The circuit judge properly held that plaintiffs had the right to enforce such building cost restrictions, and as to that the decree is affirmed.

Another phase of the case requires consideration. Plaintiffs claim that said defendants Louise Lathrup Kelley and Lathrup Town Hall Corporation, and also Charles D. Kelley, violated the injunction restraining Mrs. Kelley and Rene De Seranno from erecting or completing certain houses while the case was pending in the lower court and during the pendency of the appeal to this court.

The decree was entered in the circuit court November 24, 1942, and claim of appeal was filed November 25, 1942. On November 28th we granted a stay of all proceedings in the circuit court, and in

the same order continued in effect the temporary restraining order of the circuit judge, except to allow said defendants Louise Lathrup Kelley and Rene De Seranno *at their own risk* to proceed with the completion of certain houses then in process of construction.    The temporary restraining order was as follows:

"And it is further ordered that in the meantime and until the further order of the court, the said defendants Louise Lathrup Kelley and Rene De Seranno, their agents, employees and servants, do absolutely desist and refrain from taking any action *or permitting any action or proceeding to be taken whatsoever toward the erection of any residential building costing less than $7,500* or from erecting any residential building upon any lot area of less than 7,500 square feet, or any other structure which does not comply in all respects with the general plan, the building zone ordinance for district No. 1, township of Southfield, Oakland county, Michigan, and the building restrictions for Louise Lathrup's California bungalow subdivisions comprising the so-called 'Lathrup Townsite.'"

On January 4, 1943, we issued an order continuing the aforesaid stay in full force and effect until the further order of this court.    On June 24, 1943, a petition was filed in this court for an order requiring said defendants to show cause why they should not be punished for contempt for violation of the stay order and the restraining order which had theretofore been continued in effect.    On June 30, 1943, we cited said defendants and Charles D. Kelley to show cause why they should not be punished for contempt for violation of the stay order and the injunction.    On August 8, 1943, we referred this proceeding to Honorable George B. Hartrick, Oakland county circuit judge, to take tes-

timony and report his findings thereon. Judge Hartrick has returned the record and his findings, containing approximately 100 pages of testimony taken on the reference.

The proofs taken in the circuit court on the reference fully justify our finding that Louise Lathrup Kelley, Lathrup Town Hall Corporation and Charles D. Kelley have violated the restraining order, have been in contempt of the order of the circuit court, and have been contemptuous of the order of this court of November 28, 1942, continuing in effect the temporary restraining order. They claim that the contempt proceedings are now moot because one Sluyter, who petitioned for an order citing defendants to show cause why they should not be punished for contempt, is not now the owner of any property in the townsite, having disposed of the same. The petitioner, Sluyter, was and is a party plaintiff in the cause. His verified petition supported by affidavits confers jurisdiction. The temporary restraining order enjoined Louise Lathrup Kelley, her agents, employees and servants, from taking any action *or permitting any action or proceeding to be taken whatsoever* toward the erection of any residential building costing less than $7,500. Louise Lathrup Kelley and her husband, Charles D. Kelley, deliberately proceeded to cause the erection of residential buildings to cost not to exceed $6,000. This was done by subterfuge, which is as much a contempt of court as though done by more direct action. *Glover v. Malloska,* 242 Mich. 34. They seek to justify their conduct by the claim that the temporary restraining order was no longer in effect, relying on the fact that it was not expressly continued in effect by the order of this court entered January 4, 1943. It is true that the order of January 4th merely continued in effect the *stay*

issued November 28, 1942, but neither the order of January 4, 1943, nor any other order of this court, has set aside or terminated our order of November 28th in which this court expressly ordered that the temporary restraining order of the circuit judge be continued in full force and effect. It has never been suspended, and it is still in full force and effect. Louise Lathrup Kelley and Charles D. Kelley violated the order at their own peril. *Austin* v. *Van Horn,* 249 Mich. 347. The fact that Charles D. Kelley was not an original party in the case or named in the restraining order does not clear him of contempt. The statute (3 Comp. Laws 1929, § 13910, as amended by Act No. 29, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 13910, Stat. Ann. § 27.511]), provides:

"Every court of record shall have power to punish by fine or imprisonment, or both,   *   *   *
"5.   Parties to suits, attorneys, counselors, *and all other persons,* for   *   *   *   any other disobedience to any lawful order, decree or process of such court."

Courts possess this power independent of the statute. *In re Dingley,* 182 Mich. 44.

The conduct of Louise Lathrup Kelley, Lathrup Town Hall Corporation and Charles D. Kelley was in contempt of the restraining order of the trial court as well as the order of this court. The temporary injunction of the trial court was still in effect pending appeal, having been expressly continued in effect by the final decree of the trial court which provided it should be so continued in effect if so mandated by this court. Court Rule No. 56, § 2 (c) (1945). We remand the case to the circuit court with full power to enforce its restraining order as well as the decree of this court and the build-

ing restrictions, as construed and interpreted by this opinion. The contempt proceedings may be enforced in the circuit court. *Fitzsimmons* v. *Board of Canvassers of Detroit,* 119 Mich. 147; *Home Development Co.* v. *Omeleanchik,* 253 Mich. 568.

A decree may be entered permanently enjoining Louise Lathrup Kelley, Rene De Seranno and Lathrup Town Hall Corporation from taking or permitting any action toward erecting any residence building on any lot or lots in Lathrup Townsite (except those which the restrictions permit to be used for business, or a combination of residence and business, purposes), costing less than $7,500, such cost value to be determined as of the average for 1924 as construed in this opinion, or erecting any building on any lot or lots, or parts of lots, set aside for use for business, or a combination of residence and business, purposes, costing less than $4,000 as of 1924 as herein construed; the decree shall further provide that they be enjoined from renting, using or selling any house or building which has been erected or completed in said townsite since the temporary injunction was issued, in violation of or contrary to such temporary injunction or the building restrictions as herein construed by this court, until such building shall be shown to the satisfaction of the circuit court to have been made to comply with the building restrictions as herein interpreted and construed (see *Maine* v. *Mulliken,* 176 Mich. 443; *Home Development Co.* v. *Omeleanchik, supra);* the decree shall further provide that the case be remanded to the circuit court with full jurisdiction and power to take any further action or proceeding considered advisable by that court in connection with the pending contempt proceedings, and for the effective enforcement of the decree and the building restrictions herein involved as herein construed. Plaintiffs may have costs of the lower court and the

costs of the contempt proceedings, and as to other costs, each party having prevailed only in part, no costs of this court are awarded.

STARR, C. J., and NORTH, WIEST, BUTZEL, BUSH-NELL, SHARPE, and REID, JJ., concurred.