# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLY KIESLING LEADBETTER, also
known as KIMBERLY HUTCHINSON,

UNPUBLISHED
March 15, 2018

Plaintiff-Appellant,

v

No. 333939
Wayne Circuit Court
LC No. 06-628047-DM

THOMAS WILLIAM LEADBETTER,

Defendant-Appellee.

Before: MURRAY, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order finding her in contempt of court for violating the trial court's parenting time orders by failing to require the parties' minor child to participate in court-ordered counseling sessions with a psychologist and defendant.[1] The trial court sentenced plaintiff to serve three days in jail and required plaintiff to pay defendant $500 as a condition of her release from jail. We affirm.

## I. BACKGROUND

The parties divorced in 2008 and were awarded joint legal and physical custody of their child, who was then five year old. Since that time, there have been numerous challenges and changes to the child's custody arrangement. At an earlier proceeding, the child testified that defendant forced him to falsely accuse plaintiff and her husband of injuring and physically abusing him. The relationship between defendant and the child became very strained. After a hearing that spanned multiple days from November 2015 until January 2016, the trial court agreed that plaintiff had demonstrated that she should be awarded sole legal and physical custody of the child, but agreed to delay making a final decision in order to give defendant additional time to work on repairing his relationship with the child through court-ordered counseling sessions. During this time, defendant's parenting time was limited to the weekly joint counseling sessions with the child. In an order dated March 25, 2016, the trial court ordered the parties to follow the recommendations of the child's psychologist, which required that plaintiff not allow

---

[1] These counseling sessions comprised defendant's only parenting time with the child.

the child to control whether he would follow the trial court's orders and attend the counseling sessions, and required plaintiff to reassure the child that he would be safe in the counseling sessions with defendant.

After problems arose with the child attending the court-ordered counseling sessions, the trial court, on defendant's motion, ordered plaintiff to appear for a hearing to show cause why she should not be held in contempt for violating the court's previous parenting time orders, including the March 25, 2016 order. Following a hearing, the trial court found plaintiff in contempt for violating that order. It sentenced her to three days in jail and required her to pay defendant $500 as a condition of her release from jail. Plaintiff moved for reconsideration of the contempt order. The trial court denied the motion. Plaintiff now challenges the trial court's order of contempt.

## II. ANALYSIS

### A. MOOTNESS

We first address plaintiff's contention that this appeal is not moot even though she has fully served her jail term.

Whether an issue is moot is a question of law that is reviewed de novo. *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013).

This Court generally will not decide moot issues. *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016). "A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy." *Cooley*, 300 Mich App at 254 (citation and quotation marks omitted).

In *In re Contempt of Dudzinski*, 257 Mich App 96, 112; 667 NW2d 68 (2003), the appellant argued on appeal that his sentence of 29 days in jail was disproportionately high. This Court ruled that the issue was moot because the appellant had served his full sentence. The Court followed the rule that "[w]here a subsequent event renders it impossible for this Court to fashion a remedy, an issue becomes moot." *Id*. (Citation omitted.) Conversely, in this case, although plaintiff has already served her jail sentence and paid the $500 imposed by the trial court, she is asking that the contempt citation be set aside. Because of the trial court's continuing jurisdiction over the child in these highly contentious child custody proceedings, a previous contempt finding may have long-lasting negative implications for plaintiff as the proceedings continue in the trial court. For instance, the trial court stated its intention at the June 29, 2016 hearing to sentence plaintiff to additional jail time in the future if she again contravened the trial court's orders and impeded defendant's parenting time. Further, plaintiff is requesting return of the $500 payment imposed by the trial court if the contempt order is vacated. Thus, relief is still available to plaintiff. For these reasons, we conclude that this appeal is not moot.

### B. THE NATURE OF THE CONTEMPT PROCEEDINGS AND DUE PROCESS

On appeal, plaintiff contends that she was not provided appropriate due process protections where the contempt proceedings were criminal in nature. We disagree.

This Court reviews for an abuse of discretion a trial court's order finding a party in contempt of court. *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 386; 853 NW2d 421 (2014). This Court will review the trial court's findings of fact in a contempt proceeding to discern whether they are clearly erroneous. *Id*. This Court will find clear error only when left with a definite and firm conviction that the trial court made a mistake. *Id*. at 386-387. "Whether a party has been afforded due process is a question of law, subject to review de novo." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009).

To the extent that plaintiff argues that she was not provided due process during the contempt proceedings, we must first discern the nature of the proceedings. This is because due process safeguards will vary depending on whether the proceedings were criminal or civil in nature. *Porter v Porter*, 285 Mich App 450, 457; 776 NW2d 377 (2009). A contempt proceeding for failure to comply with a parenting time order is generally considered civil in nature. *Id*. at 458.

> "Criminal contempt differs from civil contempt in that the sanctions are punitive rather than remedial." [*DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007)]. "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." *In re Contempt of Henry*, 282 Mich App 656, 666; 765 NW2d 44 (2009) (quotation marks and citations omitted). Criminal contempt is intended to punish the contemnor for past conduct that affronts the dignity of the court. *Jaikins v Jaikins*, 12 Mich App 115, 120; 162 NW2d 325 (1968). Thus, when a court exercises its criminal contempt power it is not attempting to force the contemnor to comply with an order, but is simply punishing the contemnor for past misconduct that was an affront to the court's dignity. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 713; 624 NW2d 443 (2000). On the other hand, if the court employs its contempt power to coerce compliance with a present or future obligation or to reimburse the complainant for costs incurred by the contemptuous behavior, including attorney fees, the proceedings are civil. *In re Contempt of Dougherty*, 429 Mich 81, 91–96; 413 NW2d 392 (1987); *In re Contempt of Calcutt*, 184 Mich App 749, 758; 458 NW2d 919 (1990); MCL 600.1721. Thus, there "are two types of civil contempt sanctions, coercive and compensatory." *Dougherty, supra* at 97. Nevertheless, civil sanctions primarily intended to compel the contemnor to comply with the court's order may also have a punitive effect. *Id*. at 93; *DeGeorge, supra* at 592. "If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil. . . . The order in such a case is not in the nature of a punishment, but is coercive, to compel him to act in accordance with the order of the court." *Dougherty, supra* at 95, quoting *People ex rel Attorney General v Yarowsky*, 236 Mich 169, 171; 210 NW 246 (1926) (citation omitted). [*Porter*, 285 Mich App at 455-456.]

In this case, the trial court, in its order denying plaintiff's motion for reconsideration, stated that "the [c]ourt held plaintiff in civil contempt for a parenting time violation pursuant to MCL 552.644(2)[.]" As the *Porter* Court recognized, MCL 552.644 "authorizes a friend of the

court to initiate civil contempt proceedings if administrative action to compel compliance with a parenting time order is unsuccessful." *Porter*, 285 Mich App at 458.

> Although [MCL 552.644] appl[ies] to friends of the court, and therefore [is] not directly applicable to the present case where a party to a domestic relations matter directly initiates contempt proceedings, *[the statute] express[es] a policy that, generally, a trial court's invocation of its contempt authority to enforce a parenting time order is a civil proceeding.* [*Porter*, 285 Mich App at 458 (emphasis added).]

Our review of the record indicates that rather than attempting to punish plaintiff for her past misconduct in violating the trial court's orders, the trial court, by holding plaintiff in contempt, intended to coerce her going forward into complying with its multiple orders in this highly contentious child custody case where the trial court had ordered that the minor child spend parenting time with defendant, and that the minor child not be able to dictate the manner and terms of parenting time. *Id*. at 459; see also *In re Auto Club Ass'n*, 243 Mich App at 713 (recognizing that "[a] court exercising its criminal contempt power is not attempting to force the contemnor to comply with an order.") Specifically, during the June 29, 2016 hearing, the trial court, after finding plaintiff in contempt, noted that it was ordering that parenting time sessions between defendant and the minor child resume, and that if the minor child were to miss another parenting time, plaintiff would be spending 45 days in the Wayne County jail and face additional costs and fines.

Plaintiff's primary argument on appeal attempting to characterize the contempt proceedings as criminal in nature focuses on her allegation that she was not afforded an opportunity to purge herself of the contempt. See *In re Maroun*, 295 Mich App 312, 336; 814 NW2d 319 (2012) (opinion by K.F. KELLY, J) (recognizing that one of the hallmarks of a civil contempt proceeding is "whether the contemnor can avoid the sentence imposed . . . or purge himself of it, by complying with the terms of the original order.") However, the complex facts of this case, and the highly contentious nature of the lower court proceedings, lead us to conclude that the proceedings were not criminal in nature. As noted above, generally a trial court's invocation of its contempt power to enforce a parenting time order is considered a civil proceeding. *Porter*, 285 Mich App at 458. While the trial court's bench ruling and resultant order did not specify how plaintiff could purge herself of the contempt, there are several reasons why this was the case. To effectively comply with the trial court's previous orders mandating parenting time, plaintiff was required to make sure that the minor child attended parenting time not only with defendant, but also with the minor child's psychologist, Dr. John Cotter, which would have required the coordinating of multiple schedules. Further complicating matters, during the same June 29, 2016 hearing that plaintiff was held in contempt, the trial court also found defendant in contempt for the non-payment of child support, and sentenced him to 45 days in the Wayne County Jail. Thus, the trial court no doubt recognized that purging any contempt on the part of plaintiff would be rendered near to impossible given defendant's sentence. Moreover, at the conclusion of the June 29, 2016 contempt hearing, the trial court noted that the minor child's parenting time with defendant would resume the Wednesday *after* defendant was released from the Wayne County Jail, as long as Dr. Cotter's schedule accommodated that proposed day. All of these facts provide an explanation for why the trial court's ruling and

ensuing order did not contain a provision regarding how plaintiff could excise herself from the contempt.

Moreover, as this Court noted in *Porter*, 285 Mich App at 457, civil contempt ends when the contemnor (1) complies with the trial court's order or (2) is not in a position to do so and (3) pays related fees and costs. MCL 600.1715(2) likewise provides, in pertinent part, as follows:

> If the contempt consists of the omission to perform some act or duty *that is still within the power of the person to perform*, the imprisonment shall be terminated *when the person performs the act or duty or no longer has the power to perform the act or duty*, which shall be specified in the order of commitment, and pays the fine, costs, and expenses of the proceedings, which shall be specified in the order of commitment.

Put simply, where both plaintiff and defendant were to be housed in the Wayne County Jail, plaintiff purging herself from the contempt that led to the trial court's order holding her in contempt for impeding parenting time was not a realistic possibility. Accordingly, given the circumstances of this particular case, we disagree with plaintiff's contention that the contempt proceedings were criminal in nature.

We are also satisfied that plaintiff received the due process that she was entitled to in a civil contempt proceeding where she was provided with "rudimentary due process," including notice and the opportunity to present a defense where she was represented by counsel, and defendant bore the burden of establishing that plaintiff had violated the trial court's previous orders regarding the minor child's parenting time with defendant. *Porter*, 285 Mich App at 456-457. The concept of due process is flexible, and the inquiry concerning what process is due depends on the specific nature of the proceedings, the risks for the contemnor, as well as the private and governmental interests at stake. *In re Henry*, 282 Mich App at 669. The touchstone of due process is "fundamental fairness." *Id*. (Citation omitted.) We are not persuaded that plaintiff was denied such fundamental fairness.

## C. THE TRIAL COURT'S FACTUAL FINDINGS

On appeal, plaintiff also challenges the trial court's factual findings, arguing that they do not reflect that plaintiff in fact violated the trial court's order leading to its finding of contempt. We disagree.

"[T]he party seeking enforcement of the court's order bears the burden of proving by a preponderance of the evidence that the court's order was violated." *Porter*, 285 Mich App at 457. During a civil contempt proceeding, the trial court acts as the factfinder to determine, according to a preponderance of the evidence standard, if contempt occurred. *In re Auto Club Ass'n*, 243 Mich App at 712.

In this case, the trial court explained that plaintiff violated the trial court's March 25, 2016 order requiring plaintiff to assure the child that he would not be in danger from his parenting time with defendant and to not allow the child to unilaterally make decisions about complying with the trial court's orders. The trial court's order to show cause provided plaintiff with notice that she was to respond to claims that she was in violation of the trial court's March

25, 2016 order, in addition to the three other orders cited in the order to show cause. Our review of the record also supports the trial court's factual determination that plaintiff was allowing the child to decide whether he would attend sessions in spite of being expressly ordered not to allow such behavior by the trial court. Therefore, plaintiff's actions support the trial court's finding that she subverted the trial court's order. While plaintiff might not be expected to physically force the child, who was then 13 years old, to attend the parenting time sessions, as the trial court recognized, by failing to institute appropriate disciplinary measures or establish other consequences for his refusal to attend counseling, she was effectively allowing the child to decide whether to attend sessions with Dr. Cotter and defendant, in violation of the trial court's March 25, 2016 order. Additionally, while plaintiff holds Dr. Cotter responsible for the decision to cancel the parenting time appointments leading to her being held in contempt, the record reflects that Dr. Cotter cancelled appointments after plaintiff and the minor child informed Dr. Cotter that the minor child did not want to attend parenting time with defendant.

## III. CONCLUSION

The trial court's order of contempt is affirmed.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood